UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAAN RAO THAI RESTAURANT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL R. POMPEO, Sec'y, Dep't of State, *et al.*, <br><br> Defendants. | Civil Action No. 19-0058 (ESH) |

## MEMORANDUM OPINION

Plaintiffs are Baan Rao Thai Restaurant ("Baan Rao"), located in Minot, North Dakota, and two Thai nationals, Somporn Phomson and Napaket Suksai, who worked as Thai cooks for several years at Baan Rao on E-2 "essential employee" non-immigrant visas. (*See* Compl. ¶¶ 4-6, 9-17, ECF No. 1.) Both Mr. Phomson and Ms. Suksai applied on two occasions in 2018 to renew their visas. Their applications were rejected by the U.S. Embassy in Bangkok, Thailand. Plaintiffs now seek review of the visa denials as arbitrary and capricious and contrary to law under the Administrative Procedure Act ("APA") and provisions of a treaty between the United States and Thailand. Because the doctrine of consular nonreviewability precludes judicial review of plaintiffs' claims, the Court will grant defendants' motion to dismiss.

## BACKGROUND

Baan Rao has operated in Minot, North Dakota, since 2008. (*See id.* ¶ 4.) Ms. Suksai received an E-2 visa and was admitted to the United States in E-2 status from 2010 to 2012, during which time she worked at Baan Rao. (*See id.* ¶¶ 6, 10.) Mr. Phomson worked as a cook at the restaurant for approximately six years, from 2012 until 2018. (*See id.* ¶¶ 5, 10-11.) Mr.

Phomson was first granted an E-2 visa and admitted to the United States in 2012. (*See id.* ¶ 10.) He successfully applied to the United States Citizenship and Immigration Services ("USCIS") to extend his E-2 visa status in 2014 and 2016. (*See id.*) In 2017, the USCIS California Service Center denied Mr. Phomson's application for an extension on the basis that he was not an "essential" employee of Baan Rao. (*See id.* ¶ 11.) After Baan Rao challenged the decision in federal court, USCIS reopened the application and approved the extension, which was valid until October 1, 2018. (*See id.*)

In June 2018 Mr. Phomson and Ms. Suksai applied at the U.S. Embassy in Bangkok for new E-2 visas as employees of Baan Rao, arguing that they are "employed . . . in a responsible capacity" within the meaning of a treaty between the United States and Thailand, which is the underlying authority for a Thai national to receive an E-2 visa. *See* Treaty of Amity and Economic Relations, U.S.-Thail., art. I, ¶ 1, 19 U.S.T. 5843 (1968) ("U.S.-Thail. Treaty"). (*See also* Compl. ¶¶ 12-13.) E-2 visas must be authorized by such a treaty. *See* 8 U.S.C. § 1101(a)(15)(E)(ii) (providing that an individual may seek entry into the United States under "a treaty of commerce and navigation between the United States and the foreign state of which he is a national . . . solely to develop and direct the operations of an enterprise. . . .").

The Embassy denied both applications because they "did not meet all of the requirements of an E-2 essential employee as specified in 9 FAM 402.9-7." (Compl. ¶ 14 (citing U.S. Dep't of State Foreign Affairs Manual).) Mr. Phomson and Ms. Suksai reapplied in September 2018, and included in their applications a statement from the owner of Baan Rao "explaining the shortage of qualified Thai chefs in Minot, North Dakota." (*See id.* ¶¶ 15-16.) The applications again were denied. (*See id.* ¶ 17.)

Plaintiffs initiated this action on January 10, 2019. They bring two causes of action: (1) a claim that defendants "erred as a matter of law and acted arbitrarily and capriciously in denying" Mr. Phomson and Ms. Suksai's E-2 visa applications, in violation of the APA (Count I); and (2) an *ultra vires* claim that a treaty between the United States and Thailand bars defendants' requirement that those seeking E-2 employee visas must be "essential" to the business (Count II). (*See id.* ¶¶ 24-28.) Defendants have moved to dismiss, or in the alternative, for a transfer of venue to federal court in North Dakota. (*See* Mem. of Points & Auth. in Support of Defs.' Mot. to Transfer or to Dismiss, ECF No. 7-1 ("Mot. to Dismiss").) Plaintiffs opposed (Pls.' Mem. in Opp'n to Mot. to Dismiss or to Transfer Case, ECF No. 8 ("Opp'n")), and defendants filed a reply. (Defs.' Reply to Opp'n to Mot. to Dismiss or to Transfer, ECF No. 10 ("Reply").)

## ANALYSIS

### I. MOTION TO DISMISS

#### A. Count I – Administrative Procedure Act

In Count I, plaintiffs challenge the denials of their visa applications as contrary to law and arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2). Defendants argue that the doctrine of consular nonreviewability bars judicial review of any claim for relief, and therefore, the Court should dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs bear the burden "to establish that the Court has subject matter jurisdiction over the action." *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182-83 (1936)).

Judicial review of visa denials by consular officials at United States Embassies, such as the denials at issue here, is generally precluded under the broad and established doctrine of consular nonreviewability. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159-60 (D.C. Cir. 1999) ("For the greater part of this century, our court has therefore refused to review visa decisions of consular officials."); *see also Castaneda-Gonzalez v. INS*, 564 F.2d 417, 428 n.25 (D.C. Cir. 1977) (explaining that a consular official may refuse to issue a visa to an alien "without fear of reversal since visa decisions are nonreviewable"). This doctrine is rooted in the separation of powers and the principle that it is "not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Saavedra Bruno*, 197 F.3d at 1159 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). The doctrine precludes review even where it is alleged that the consular officer failed to follow regulations, *Burrafato v. Dep't of State*, 523 F.2d 554, 555-57 (2d Cir. 1975); the applicant challenges the validity of the regulations on which the decision was based, *Ventura-Escamilla v. INS*, 647 F.2d 28, 32 (9th Cir. 1981); or the decision is alleged to have been based on a factual or legal error. *Loza-Bedoya v. INS*, 410 F.2d 343, 346-47 (9th Cir. 1969).[1]

An APA challenge based on a consular official's visa denial falls well within the scope of the consular nonreviewability doctrine, as interpreted by the D.C. Circuit. *See Saavedra Bruno*, 197 F.3d at 1162; *see also Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009) (holding that the APA "provides no basis for challenging consular visa decisions"). In *Saavedra*

---

[1] Indeed, consular officers or the Secretary of State may in their discretion revoke visas at any time, and by federal statute such a revocation is completely exempt from judicial review "except in the context of a removal proceeding if such revocation provides the sole ground for removal[.]" 8 U.S.C. § 1201(i).

*Bruno*, the D.C. Circuit concluded that a visa denial or revocation by a consular officer was not reviewable for factual errors on which the decision allegedly relied, because "the immigration laws preclude judicial review of consular visa decisions." *Saavedra Bruno*, 197 F.3d at 1162. In rejecting the argument that an APA challenge constitutes an exception to the doctrine, the Court stated:

> There was no reason for Congress to say as much expressly. Given the historical background against which it has legislated over the years, . . . Congress could safely assume that aliens residing abroad were barred from challenging consular visa decisions in federal court unless legislation specifically permitted such actions. The presumption, in other words, is the opposite of what the APA normally supposes.

*Id.* at 1162. Thus, in terms of a plaintiff's right of review under the APA, "the doctrine of consular nonreviewability—the origin of which predates passage of the APA"—constitutes a limitation on judicial review. *Id.* at 1160; *see also Allen v. Milas*, 896 F.3d 1094, 1107 (9th Cir. 2018) (agreeing with the D.C. Circuit's analysis, because to treat statutory claims as reviewable under the APA would "convert[] consular nonreviewability into consular reviewability").

Courts have, however, recognized narrow exceptions to this doctrine. One exists if a constitutional violation is alleged. *See Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972) (holding that a narrow exception to consular nonreviewability exists for review of constitutional claims where there is no "facially legitimate and bona fide" reason supporting deference to the consular decision); *see also, e.g.*, *American Sociological Ass'n v. Chertoff*, 588 F. Supp. 2d 166 (D. Mass. 2008) (finding a visa denial claim reviewable under *Mandel* for alleged constitutional violation, but rejecting other claims under the APA and federal question statute as unreviewable because of the doctrine of consular nonreviewability).

Here, plaintiffs point to case law carving out a second narrow exception to the doctrine of consular nonreviewability wherever "Congress says otherwise"—*i.e.*, clarifying that the doctrine

5

applies only in the absence "of any statute expressly authorizing judicial review of consular officers' actions." *Saavedra Bruno*, 197 F. 3d at 1159; *see also Knauff*, 338 U.S. at 543 ("[I]t is "not within the province of any court, *unless expressly authorized by law*, to review the determination of the political branch of the Government to exclude a given alien.") (emphasis added).

Plaintiffs argue that this exception applies here because a treaty between the United States and Thailand contains the following language about access to courts:

> Nationals . . . of either Party shall have free access to courts of justice and administrative agencies within the territories of the other Party, in all degrees of jurisdiction, both in the defense and in the pursuit of their rights. Such access shall be allowed on terms no less favorable than those applicable to nationals . . . of such other Party. . . .

U.S.-Thail. Treaty, art. II ¶ 2. Plaintiffs argue that this provision expressly entitles them to judicial review to defend their rights under the Treaty, including the right to seek an employment visa. Neither party has provided any authority to assist the Court in interpreting the language of the Treaty to determine whether it permits judicial review of consular visa decisions involving Thai nationals.[2] And, as best as can be determined, this is a case of first impression.

But an examination of the Treaty's language reveals that it is not as expansive as plaintiffs suggest. The Treaty provides for reciprocal "free access to courts of justice . . . on terms no less favorable than those applicable to nationals" of either party. U.S.-Thail. Treaty, art. II ¶ 2. This is known as a "national access" provision. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 72-73 (2d Cir. 2003). In cases considering claims of *forum non*

---

[2] Defendants' sole argument on this point is that the Court previously dismissed another visa denial case pursuant to the doctrine of consular nonreviewability, even though a similar treaty existed with Iran. *See Mostofi v. Napolitano*, 841 F. Supp. 2d 208 (D.D.C. 2012). The question now before the Court, however, was not at issue in *Mostofi*, because no party raised an argument based on a treaty between the United States and Iran.

*conveniens*, national access provisions have been held to confer, on nationals of countries with such treaties with the United States, a right to deference to plaintiffs' choice of forum that is comparable to the deference owed to a U.S. plaintiff. *See id*.

Such language cannot be read to create a right to judicial review where it would normally be precluded. *See, e.g.*, *Pfizer, Inc. v. Lord*, 522 F.2d 612, 619 n.9 (8th Cir. 1975) (in the context of a dispute unrelated to visa denials, noting that national access language in a treaty with Iran "merely guarantees access to United States courts on the same terms available to United States nationals, not more favorable terms or additional remedies"). The U.S.-Thail. Treaty provides for access to United States courts for Thai nationals on terms "no less favorable" than those afforded U.S. nationals. But district courts routinely dismiss U.S. nationals' lawsuits challenging family members' visa denials as unreviewable under the doctrine of consular nonreviewability. *See, e.g.*, *Mostofi v. Napolitano*, 841 F. Supp. 2d 208 (D.D.C. 2012) (consular nonreviewability precluded the district court's exercise of jurisdiction over United States citizen's lawsuit challenging denial of immigrant visa for her Iranian husband); *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (dismissing as unreviewable claim that consular officer had failed to follow procedure in refusing visitor's visa to plaintiff's sibling, a Korean national).

Article I of the U.S.-Thail. Treaty provides the conditions under which a Thai national employed "in a responsible capacity" in an eligible business may seek an E-2 visa; it does not establish an absolute right to receive such a visa, much less explicitly state that the established doctrine of consular nonreviewability should not apply to these visa-seekers. U.S.-Thail Treaty, art. I ¶ 1. And, although national access provisions exist in several treaties with other countries (*see* Reply at 2 n.1 (citing treaties)), many courts have dismissed similar actions because of the doctrine, including in cases in which a treaty has been raised as a source of authority, without

7

even addressing the applicability of such a provision to the doctrine of consular nonreviewability. *See, e.g,. Malyutin v. Rice*, 677 F. Supp. 2d. 43 (D.D.C. 2009) (dismissing for lack of subject-matter jurisdiction due to doctrine of consular nonreviewability, even though complaint had alleged, *inter alia*, violation of "an international treaty"), *summarily aff'd* No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010); *Dargahifadaei v. Kerry*, No. 3-12-CV-01942, 2013 WL 1627887, at *1, *3 (N.D. Tex. Apr. 15, 2013) (denying APA challenge to denial of E-2 investor treaty visa based on the Treaty of Friendship and Commerce between the United States and Iran at the Consulate General of the United States in Dubai, United Arab Emirates).

Given the strength of the doctrine of consular nonreviewability, the Court concludes that the right to national access under the U.S.-Thail. Treaty is not the "express" exception that would be necessary to overcome the presumption against reviewability. *Knauff*, 338 U.S. at 543.

Plaintiffs also argue that the Court has jurisdiction pursuant to the federal question statute, 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*See* Opp'n at 4.) These arguments also fail. "The general federal-question statute does not itself give rise to a right for relief." *Van Ravenswaay*, 613 F. Supp. 2d at 5-6 (citing *Mead Corp. v. United States*, 490 F. Supp. 405, 407 (D.D.C. 1980) ("[S]ection 1331 does not itself create substantive rights or causes of action . . . but only confers jurisdiction on the district courts to hear certain cases that are supported by an independently created substantive cause of action[.]"), *aff'd*, 652 F.2d 1050, 1053 (D.C. Cir. 1980) ("We agree with the district court that [§ 1331 does not] provide [] an independent basis of federal jurisdiction.")). The Declaratory Judgment Act likewise is "not cognizable where, as here, Plaintiff has no clear right to relief." *Van Ravenswaay*, 613 F. Supp. 2d at 6 (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding that the Declaratory Judgment Act "presupposes the existence of a judicially remediable right")). Because plaintiffs

have not shown that the U.S.-Thail. Treaty provides rights sufficient to overcome the doctrine of consular nonreviewability, these other arguments, like plaintiffs' APA argument, fail to establish that the Court has jurisdiction over the present dispute.

Given the breadth of the doctrine of consular nonreviewability, plaintiffs have not met their burden to show that the Court has subject-matter jurisdiction over this claim.

### B. Count II – *Ultra Vires* Requirement in Violation of U.S.-Thail. Treaty

Plaintiffs also argue that consular nonreviewability does not bar this action "because it does not challenge any particular visa decision but rather whether the Department of State's regulations properly interpret the treaty and use the proper legal standard." (Opp'n at 4.) This argument is based on plaintiffs' complaint that the State Department is improperly imposing as an E-2 visa requirement that an employee must be "essential." 9 Foreign Affairs Manual § 402.9-7(C)(a), *available at* https://fam.state.gov/Fam/FAM (employees who qualify for E-2 visas under State Department regulations include those who "have special qualifications that make the service to be rendered essential to the efficient operation of the enterprise"). (*See also* Compl. ¶ 22 (quoting this provision).)

So-called "E visas," including those for employees, must be provided for by treaty. The statute providing for E-2 visas explains that a foreign national may enter the United States temporarily as a non-immigrant visitor if he or she is

> entitled to enter the United States under and in pursuance of a treaty of commerce and navigation between the United States and the foreign state of which he is a national . . . solely to develop and direct the operations of an enterprise in which he has invested, or is actively in the process of investing, a substantial amount of capital.

8 U.S.C. § 1101(a)(15)(E)(ii). For Thai nationals, this includes "developing and directing the operations of an enterprise" in which "the applicant is employed by such national or company in

9

a responsible capacity." U.S.-Thail. Treaty, art. 1 ¶ 1. Based on these provisions, plaintiffs argue that the U.S.-Thail. Treaty requires only that an employee be employed "in a responsible capacity," and that the State Department has imposed the "essential" requirement without legal authority to do so. (Compl. ¶ 28.)

Contrary to plaintiffs' contentions, their action squarely challenges the denial of plaintiffs' visa applications. The Complaint alleges that the State Department "acted arbitrarily and capriciously in denying the E-2 essential employee visa applications," and that Mr. Phomson and Ms. Suksai "meet the requirements for this visa" and it should have been granted to them. (*Id.* ¶¶ 24-25.) Plaintiffs explicitly ask the Court to order defendants to reverse the decision to deny the visas. (*See id.* at 8, Prayer for Relief ¶ 2.) As explained *supra*, the law is clear that the doctrine of consular nonreviewability "applies where a plaintiff attempts to circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision." *Malyutin*, 677 F. Supp. 2d at 46; *see also Ventura-Escamilla*, 647 F.2d 28 (finding a consular official's visa determination not subject to review even though the applicant challenged the validity of the regulations on which the decision was based). Plaintiffs' *ultra vires* argument therefore fails.

II. **MOTION TO TRANSFER**

Because the Court grants defendants' motion to dismiss based on the doctrine of consular nonreviewability, the Court need not reach defendants' alternative argument that this matter should be transferred to another venue. *See, e.g.*, *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 424-25 (2007) ("If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground [before turning to *forum non conveniens* considerations].").

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss, denies as moot defendants' motion to transfer, and dismisses without prejudice plaintiffs' complaint. A memorializing order accompanies this Memorandum Opinion.

/s/ Ellen S. Huvelle
ELLEN SEGAL HUVELLE
United States District Judge

Date: July 29, 2019